United States District Court
Southern District of Texas
**ENTERED**
March 20, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUIS A MENDOZA (TDCJ #00783576), | § | |
| and JOE DE LA CRUZ | § | |
| (TDCJ #01836368), | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-01900 |
| | § | |
| BRYAN COLLIER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmates Luis Mendoza (TDCJ #00783576) and Joe De la Cruz (TDCJ #01836368) (collectively, "Plaintiffs") filed this prisoner civil rights case under 42 U.S.C. § 1983, contending that various officials at the Texas Department of Criminal Justice violated their civil rights in connection with their seminary course, grading, and the handling of grievances. *See* Doc. No. 3 (Amended Complaint). After conducting the screening required under 28 U.S.C. § 1915A and reviewing all of the pleadings and the applicable law, the Court will dismiss this case for the reasons explained below.

## I.    JOE DE LA CRUZ'S CLAIMS

On February 15, 2022, the Court ordered Plaintiff Joe De La Cruz to show cause "as to why he has neither paid the filing fee nor moved for leave to proceed *in forma pauperis* as directed in the Court's June 24, 2021 Notice of Deficient Pleading" and warned

De La Cruz that "his failure to comply with that Notice and this Order may result in the dismissal of his claims without prejudice under Federal Rule of Civil Procedure 41(b) without further notice." Doc. No. 13 at 3.

To date, De La Cruz has not responded to the Court's Order to Show Cause. Plaintiff De La Cruz's failure to pursue this action leads the Court to conclude that he lacks due diligence. Therefore, under the inherent powers necessarily vested in a district court to manage its own affairs, this Court determines that dismissal for want of prosecution is appropriate. *See* FED. R. CIV. P. 41(b); *Slack v. McDaniel*, 529 U.S. 473, 489 (2000) (stating that "[t]he failure to comply with an order of the court is grounds for dismissal with prejudice"); *Larson v. Scott*, 157 F.3d 1030 (5th Cir. 1998) (noting that a district court may *sua sponte* dismiss an action for failure to prosecute or to comply with any court order). Accordingly, De La Cruz's claims are DISMISSED without prejudice for failure to prosecute this action.

## II.   LUIS A. MENDOZA'S CLAIMS

### A.   BACKGROUND

The following allegations come from Mendoza's Amended Complaint and are accepted as true for the purposes of screening under the Prison Litigation Reform Act ("PLRA").

At the time of the events that form the basis of this lawsuit, Mendoza was enrolled in a 230-hour, accredited Bachelor's degree program in Biblical Studies offered by Southwestern Baptist Theological Seminary ("SWBTS") at the Darrington Unit (now

called the Memorial Unit).[1]  Full-time professors or adjuncts at the at the seminary taught

the classes.  For the fall semester 2019, Mendoza was a junior in the program.  He alleges

that he had to take Systematic Theology III ("ST III") before Systematic Theology I and II

("ST I" and "ST II," respectively) because the seminary combined the juniors and seniors

in the same class.  Professor Sweet,[2] who taught ST III, cautioned the students that the class

was difficult but reassured them that he would show them grace and be lenient if they

applied themselves.  The syllabus for the course, a portion of which Mendoza attaches to

his pleadings, indicates that the course was held Tuesday mornings from August 20, 2019,

to December 3, 2019.  Doc. No. 1-1 at 1.  According to the syllabus, the doctrinal synthesis

paper constituted 40% of the grade.  *Id.* at 2.  Students were admonished:

> As students of Southwestern Baptist Theological Seminary, you are expected
> to conduct yourself in a manner consistent with your positions as such.  Thus,
> you are expected to work hard, do your best, and accept the scrutiny given to
> you in a dignified and reflective manner.
>
> All grades are final are non-negotiable. Do not haggle with the professor or
> the professor's graduate student.
>
> . . . .
>
> The professor reserves the right to alter the course schedule, testing methods,
> and assignments.

Doc. No. 1-1 at 3.

---

[1]  The Darrington Unit has been renamed the Memorial Unit.  *See* TDCJ website news release,
TDCJ News - TDCJ to Rename Three Facilities (texas.gov).

[2] According to the syllabus, Prof. Sweet had a master's degree in theology and was a PhD student
and adjunct professor at SWBTS in the fall of 2019.  Doc. No. 1-1 at 1.

Mendoza claims that due to issues within the seminary administration, Professor Sweet, Jesse Medina, and Director Brad Heller were either terminated or quit on or around December 9, 2019. He alleges that Defendant George Dyson, known as "Pastor G," was given the director position to instill discipline in the program and "raise the bar." Doc. No. 3 at 4. He alleges that Dyson is the Director of Bible College at the Darrington/Memorial Unit.

On December 10, 2019, Mendoza attended ST III class. He alleges that Dyson had another inmate, Vondre Cash, preside over the class and perform the duties of a professor without Dyson's supervision. Mendoza alleges that Cash had complete authority over the class of inmates and administered the final exam the week later on December 17, 2019. *Id.*

Mendoza received a D+ in ST III, and Dyson placed him on academic probation. Because he was on academic probation, Mendoza was not allowed to go "tier-walking," which involved ministering in other housing areas, at the Darrington/Memorial Unit. He was also assigned a mentor. Mendoza states that he enjoyed the privilege of tier-walking because he made lots of friends and was able to reach out to inmates and bring them hope. *Id.* at 5. Because he was no longer allowed to go tier-walking, he was unable to visit friends on A and D line who were anticipating his visits. He considered this a punishment and questioned who graded his assignments.

Mendoza states that he does not believe that Dyson graded his assignments because Dyson allegedly never entered the ST III class when Cash presided over it. Mendoza asked Cash about his grade, and on Jan 23, 2020, Cash brought a folder containing Mendoza's

assignments, sat down with Mendoza, and went through each assignment, explaining why Mendoza received the grade he did. During the assignment review, Mendoza states that he saw discrepancies in Cash's grading. Mendoza compared the writing on the original grading to Cash's writing and believes that Cash graded his papers and other assignments.

Mendoza believes that Cash, an inmate like him, is responsible for giving him a D+ in ST III. Mendoza contends that no other inmate has the right to evaluate, read, and/or even grade his assignments, which influenced Mendoza's GPA. Mendoza decided to try to resolve the matter informally by writing a letter to Dyson, asserting that prisoners have rights in prison, contrary to Dyson's contentions in an earlier town meeting. He requested that Dyson change his grade from a D+ to a C- and to lift the academic probation to resolve the matter and not permit it to escalate. He also asked that no inmate be allowed to have authority over another inmate in grading and that the ruling in *Ruiz v. Estelle* be honored. *Id.* at 8.

On February 3, 2020, after Mendoza gave the letter to Dyson, Dyson called him into his office and told him that he was mistaken about Cash giving him his grade. Dyson further asked Mendoza if he missed any classes, and Mendoza indicated that he had. Dyson allegedly told Mendoza that he was at the school by grace. Mendoza alleges that he was there by grace but also by virtue of some anonymous donor giving upwards of $40,000 to $65,000 for his tuition. Mendoza claims that the conversation with Dyson was one-sided because Mendoza was not permitted to explain his position. Mendoza believes that Dyson

was upset because Mendoza accused him of "breaking the law" by using an inmate in a supervisory capacity over other inmates. *Id.* at 9.

About two days later, Dyson talked with Mendoza and his mentor over lunch. Dyson brought Mendoza's ST III paper, handed it to him, and told him that if he made corrections Dyson would change his grade. However, the academic probation was not lifted and Mendoza could not go tier-walking for the rest of the semester. Mendoza alleges that when he made the corrections, Dyson expressed concern that Mendoza would pursue further legal action if Dyson did not change his grade, and asked him three times if this was the case. Mendoza did not answer his question and just stated that the paper was in his box.

On March 13, 2020, President Trump announced a national emergency due to the COVID-19 pandemic. The Bible College was shut down, and then reopened with the limitation of one class per week and 10 students per class. Computer time was limited as well, making it difficult to finish assignments. As an accommodation, students were allowed to hand-write their assignments. However, because Mendoza was able to finish his ST II paper for his spring semester class on the computer, he passed in a typed assignment instead. *Id.* at 11.

Students are warned that their papers will be submitted to Black Board, an online anti-plagiarism site. Mendoza's paper was submitted, and the paper came back indicating that he had plagiarized some portions of his paper.

On or around August 11, 2020, Mendoza was called into Dyson's office, and Professor Mark Baker was there.  Mendoza alleges that he was handed his transcript and told that he was being suspended from school for 1 year for plagiarism.  Mendoza looked at his transcript and noticed that Dyson did not change his grade.  Mendoza confronted Dyson about it, and Dyson told him he did not promise to change his grade.  *Id.*  Mendoza alleges that Dyson accused him of plagiarism, which resulted in an F in ST II and a year suspension, because Mendoza complained about his grade in ST III.  Mendoza further complains that because of a series of coupling and de-coupling of classes and academic schedules, he was delayed in completing his degree by not just one year but two, and by then the SWBTS was not sponsoring the program and instead it is now run by the Heart of Texas College of Ministry, which he alleges has not received its accreditation.  *Id.* at 13.  He claims that because of this change, he will not be able to get the ST II failing grade corrected and that this permanently mars his record.

Mendoza also claims that he was treated differently from the students who hand-wrote their papers because the handwritten assignments could not be submitted to Black Board to check for plagiarism, whereas his paper could be.  He contends that if all of the papers could not be submitted to Black Board, then his paper should not have been submitted to Black Board.  *Id.* at 16.

Mendoza further disputes that what he wrote is actually plagiarism because it is something well known and within common knowledge.  He also alleges that Dyson did not apply the punishment for a first-time offense of receiving an F on the assignment rather

than the harsher punishment Mendoza received, which was a one-year suspension.  He complains that his ST II professor was not present or involved in the punishment for plagiarism and that the professor should have been involved if his paper was a problem. He claims that he was not afforded the "grace" that was announced for being allowed to correct plagiarism if such was found in time to correct it before the assignment was due. *Id.* at 14-15.

Mendoza alleges that he filed his first grievance about matters regarding his schooling issues on August 14, 2020, pertaining to Dyson's placing of Cash, an inmate, over the ST III class in December 2019.  *Id.* at 16.  The rejected grievance was returned to Mendoza as untimely and included a form on how to file grievances correctly.  He complains that this form is designed to mislead the prison population and that TDCJ does not provide the prisoners with a copy of the Offender Grievance Operational Manual ("OGOM").  *Id.* at 17.  He claims that this means that the inmates are completely dependent on the Unit Grievance Investigators ("UGI"s) to tell them how the system works and that this places them at a disadvantage when wanting to pursue non-frivolous claims.[3]  He alleges that he only became aware of the problem with Dyson not changing his grade in August 2020 when he received the suspension and saw his transcript with the D+ for ST III was still there.  Doc. No. 3 at 18.

Mendoza also claims that Defendant UGI Lula Lincoln-Moon deliberately frustrated the grievance process by misinforming Mendoza about the time limits for filing

---

[3] Mendoza attaches portions of the OGOM to his 60-page Original Complaint. *See* Doc. No. 1-2 at 8-12.

grievances. He alleges that his other grievances were returned as redundant even though they challenged different aspects of Dyson's alleged wrongs regarding his grades and suspension. When Mendoza did not receive the response he wanted, he wrote a letter to Lincoln-Moon "enlighten[ing]" her "about her actions to deny him the right to file a non-frivolous grievance" and "warn[ing] her of the ramifications in denying him this right." *Id.* at 19.

Mendoza allegedly corrected three grievances, put them all in an envelope addressed to Lincoln-Moon, and placed them in the grievance box. When he saw Lincoln-Moon, he inquired about the grievances, and she told him that she sent them to her supervisor. Mendoza filed other grievances and letters. Once, Dyson went to talk to Mendoza about his grievances, which Mendoza claims was verbal harassment and coercion and interpreted as Dyson trying to interfere with the grievance process, so he wrote an additional emergency grievance. *Id.* at 21. He also approached grievance administrators and verbally requested that Dyson stop harassing him and leave him alone, and the administrators assured Mendoza that Dyson would no longer bother him. He alleges that he complained on many occasions to Lincoln-Moon about how his grievances were handled and even complained to Assistant Warden Angela Chevalier, who listened to his issues and told him she would look into it. He claims that Chevalier never got back to him and knowingly and intentionally disregarded Lincoln-Moon's conduct. Mendoza complains that the entire grievance process relied only on Dyson's response to Mendoza's

accusations and that the UGIs, including Assistant Warden Moises Villalobos, did not "conduct a real investigation, or address Plaintiff Mendoza's injuries." *Id.* at 24.

Mendoza further alleges that Dyson falsified a state document when he stated that "Field Ministers . . . do not grade papers" and "I graded [Mendoza's] paper." *Id.* at 24-25. He contends that this is a criminal act and that he pressed Lincoln-Moon and Villalobos to report it to the Office of the Inspector General, but they did not do so. Mendoza filed a grievance against Lincoln-Moon for denying his right to file grievances and added allegations against Chevalier for ignoring his complaints. *Id.* at 27-29.

Mendoza was called to the UGI office the next day. *Id.* at 30. Ms. Christopher, the Administrative General Investigator ("AGI"), allegedly asked him to explain the difference between his grievances. He explained that one pertained to ST III class whereas the other pertained to ST II class. Christopher was not able to locate one of the grievances, and Mendoza alleges that it disappeared from the computer. Mendoza stated that he had a copy, so Christopher asked for his copy to make a copy and give it back. *Id.* Christopher sat across from Mendoza, read the entire grievance, and asked him what he wanted. Mendoza noted the "action requested" section, which requests reinstatement and grade correction. *Id.* at 31. Christopher stated that she would try to get his grade changed and get him back in school.

Mendoza also claims that Warden Ratliffe, who was a new warden at the time, signed off on a grievance without knowing all of the facts and that Lincoln-Moon switched the numbers on the grievance against her to make it difficult to track. *Id.* at 34. He claims

that Defendant H. W. Pederson, a Step 2 Grievance Investigator, did not conduct an adequate investigation into his grievances. Mendoza alleges that Dyson, Lincoln-Moon, Chevalier, Villalobos, and Pederson have fallen short on their duties to obey proper TDCJ procedures and policies and perform their duties in a manner that meets or exceeds minimum standards for their positions.  Doc. No. 3 at 36.

Mendoza states that he wrote to Professor Baker on March 17, 2021, and that on March 23, 2021, Baker provided an updated copy of Mendoza's transcript which shows that his ST III grade was changed to a C+.  *Id.*

Mendoza brings claims for denial of due process, Eighth Amendment cruel and unusual punishment, retaliation, equal protection, First Amendment free speech, petition, and access to courts regarding the Defendants' actions or omissions.  *Id.* at 48-55.  For relief, he seeks an injunction requiring Executive Director Collier to: (1) make a way for him to get his F in ST II changed; (2) place a copy of the OGOM in every prison library; (3) implement a policy to give each grievance a number within 24 hours; (4) refer Dyson to the Office of Inspector General for violation of penal codes; and (5) prevent retaliation. He further seeks $55,000 compensatory damages against each defendant and $50,000 in punitive damages, costs of suit, and any other relief the Court deems just.  *Id.* at 58-59.

### B.   **LEGAL STANDARD**

Mendoza filed this prisoner civil rights lawsuit while in custody of the TDCJ.  Thus, the Prison Litigation Reform Act (PLRA) applies to this lawsuit.  The PLRA requires,

among other things,[4] that a district court scrutinize claims in a civil action brought by a prisoner and dismiss the complaint, in whole or in part, if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim is frivolous if it "lacks an arguable basis in law or fact." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Talib,* 138 F.3d at 213).

## C. **DISCUSSION**

Mendoza claims that he wrongly received a D+ in ST III and an F in ST II and was unfairly suspended from the theological degree program for plagiarism. He further alleges that various grievance officials did not handle his grievances properly or provide the relief he sought through the grievance process. He sues TDCJ Executive Director Bryan Collier, Bible College Director George Dyson, Assistant Warden Angela Chevalier, Assistant Warden Moises Villalobos, UGI Lula Lincoln-Moon, Step 2 Grievance Investigator H. M. Peterson, and Step 2 Grievance Investigator L. Back.

---

[4] In addition, the PLRA bars recovery of compensatory damages where, as here, the plaintiff does not allege facts to show that he suffered any physical injury or a sexual assault. *See* 42 U.S.C. § 1997e(e); *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (holding that "[the PLRA physical injury requirement for recovery of damages] Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury").

### 1. **Executive Director Bryan Collier**

Mendoza generally alleges that Collier, as Executive Director of TDCJ, is "legally responsible for the overall operation of the Department of Corrections, and each unit in his jurisdiction." Doc. No. 3 at 2. However, supervisory officials like Collier are not liable under § 1983 for the actions of subordinates "on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citations omitted). "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Thompkins*, 828 F.2d at 304); *see also Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). Thus, "[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citation omitted).

Mendoza does not allege facts to show that Collier had any personal involvement in the acts or omissions that form the basis of this lawsuit. In addition, he does not plead facts to show that Collier implemented an unconstitutional policy that causally resulted in a constitutional injury. *Porter*, 659 F.3d at 446. Accordingly, he fails to state facts to show that Collier violated his constitutional rights, and the claims against him must be dismissed.

## 2. **Dyson**

Mendoza alleges that Dyson violated his due process rights by placing an inmate in a supervisory role over him, which influenced his GPA, and that he illegally suspended him by not applying school policy to his situation. He further contends that Dyson falsified documents to gain an unfair advantage over Mendoza and retaliated against him by interfering with his grievances. He also contends that Dyson subjected him to cruel and unusual punishment by taking away his "tier-walking" privileges and violated his equal protection rights by submitting his typed paper to Black Board to check for plagiarism.

Contrary to Mendoza's contentions, he has no protectable liberty interest in his educational courses. *See Kerr v. Davis*, 855 F. App'x 968, 969 (5th Cir. Aug. 12, 2021) (mem. op.) (holding that an inmate's exclusion from vocational educational programs in prison "'does not implicate a liberty interest' for purposes of due process because those restrictions 'do not impose atypical and significant hardship[s] on [the inmate] in relation to the ordinary incidents of prison life'") (citing *Toney v. Owens*, 779 F.3d 330, 342 (5th Cir. 2015))(alteration in citation); *see also Ketzel v. Trevino*, 264 F.3d 1140, 2001 WL 822462, at *1 (5th Cir. Jun. 18, 2001) (not selected for publication). "The fact that he [or someone else] paid for his education does not alter this result." *Ketzel*, 2001 WL 822462, at *1. Therefore, Mendoza's due process claims against Dyson for his bad grade, for having Cash teach the class, and for suspending him when he was found to have plagiarized his paper must be dismissed as frivolous.

Mendoza also seeks a criminal referral of Dyson for allegedly making a false

statement about who graded his papers. However, a civil rights plaintiff like Mendoza has

no constitutional right to have someone criminally prosecuted. *See Oliver v. Collins*, 914

F.2d 56, 60 (5th Cir. 1990). Therefore, his claim against Dyson for allegedly lying about

who graded his paper is also frivolous.

Likewise, his complaint that Dyson subjected him to "cruel and unusual

punishment" by taking away his tier-walking privileges has no arguable merit as it fails to

state a valid Eighth Amendment claim. *See, e.g., James v. Hertzog*, 415 F. App'x 530, 533

(5th Cir. 2011) (holding that "[p]unishment rises to the level of cruel and unusual

punishment only if it involves an unnecessary and wanton infliction of pain" and that,

"[n]eedless to say, denial of the right to participate in a work release program falls far short

of that") (citing *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998)). The denial of the tier-

walking privilege also falls far short of the "unnecessary and wanton infliction of pain" to

state an Eighth Amendment claim, and this claim is dismissed as frivolous.

Mendoza's First Amendment claims against Dyson for retaliation are similarly

groundless. Mendoza alleges that Dyson retaliated against him by interfering with his

grievances and suspending him from the program when he was caught plagiarizing his

paper. A prison official may not retaliate against an inmate for complaining

through proper channels about a prison official's misconduct. *Morris v. Powell*, 449 F.3d

682, 684 (5th Cir. 2006). "To prevail on a claim of retaliation, a prisoner must establish

(1) a specific constitutional right, (2) the defendant's intent to retaliate against

the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4)

causation." *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998). "Causation requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* (internal quotation marks and citations omitted). A plaintiff must allege facts to show direct causation or "allege a chronology of events from which retaliation may be plausibly inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Mendoza does not plead facts to show that he had a nonfrivolous complaint against Dyson regarding the educational program or the grades he received. *See Brown v. Craven*, 106 F. App'x 257, 258 (5th Cir. 2004) (holding that a frivolous grievance cannot form the basis of a retaliation claim); *see also Johnson v. Rodriguez,* 110 F.3d 299, 311 (5th Cir. 1997) (holding that "'neither any frivolous filings nor secondary litigation activity . . . may comprise the basis of a retaliation claim'"). Further, he does not plead facts to show that a retaliatory motive, rather than his own conduct in plagiarizing his term paper while being on academic probation, was the but-for cause of the academic discipline he experienced. Further, regarding the suspension, he does not allege a chronology of facts from which causation may be inferred because he did not even begin the grievance process until after he was suspended from the Bible College. *See* Doc. No. 16 (explaining that he filed his first grievance after he was suspended). Finally, Dyson's alleged verbal harassment and unspecified "coercion" do not state a basis for a retaliation claim because the alleged retaliatory act, if any, is *de minimis. See, e.g., Edison v. Avalon Corr. Servs.*, Civ. A. No. H-16-683, 2018 WL 4119637, at *7 (S.D. Tex. Aug. 29, 2018) (holding that "[v]erbal threats do not rise to the level of a constitutional violation" and that "courts have declined

to find actionable retaliation based on unrealized threats because the alleged retaliatory act is *de minimis*") (citing cases). Accordingly, Mendoza does not plead facts to support a claim for retaliation against Dyson, and this claim must be dismissed.

Mendoza's equal protection claim fares no better. He claims that Dyson violated his rights for equal protection when he submitted Mendoza's typewritten paper to Black Board but did not submit the other prisoners' papers to Black Board because they were handwritten. Mendoza appears to argue that a person in his classification – a student who submitted a typed paper – was treated differently from those students who submitted handwritten papers. "A challenged classification that neither involves a suspect class nor impinges upon fundamental rights is accorded a strong measure of validity." *Kerr*, 855 F. App'x at 969 (internal quotation marks and citation omitted). Mendoza's classification does not involve a suspect class or a fundamental right. Thus, rational basis review applies.

Mendoza does not plead facts to show that there is "no conceivable state of facts that could provide a rational basis for the classification." *Id.* (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Further, Mendoza pleads no facts to show purposeful discrimination resulting in a discriminatory effect among similarly situated persons. *McCleskey v. Kemp*, 107 S. Ct. 1756, 1766 (1987); *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). Mendoza fails to plead facts to show that he was treated differently from any other similarly situated inmate regarding the disciplinary sanction he faced for plagiarism and that there was no rational basis for that action. His equal protection claim is dismissed for failure to state a claim for which relief may be granted.

### 3. Lincoln-Moon, Chevalier, Villalobos, Pederson, and Back

Mendoza also claims that the administrative grievance process in prison was inadequate and violated his constitutional rights. He alleges that grievance officials, specifically Lula Lincoln-Moon, Angela Chevalier, Moises Villalobos, H.W. Pederson, and L. Back did not handle his grievances in a satisfactory fashion or follow TDCJ policy. These claims are also frivolous.

Although prisoners have the right to file grievances, "a prisoner has no free-standing constitutional right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). In other words, "[a] prisoner does not have a constitutionally protected liberty interest in having 'grievances resolved to his satisfaction.'" *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013) (quoting *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)); *see also Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006) (holding that because the plaintiff did not have a liberty interest in the resolution of his grievance, "the defendants' alleged failure to address his grievance does not constitute the violation of a constitutional right").

Likewise, to the extent that he claims defendants failed to follow TDCJ policies, he states no constitutional claim. *See Myers v. Kelvenhagen,* 97 F.3d 91, 94 (5th Cir. 1996). He does not otherwise plead facts to state a viable claim against the grievance officers or assistant wardens, and, therefore, Mendoza's claims against Lincoln-Moon, Pederson,

Back, Villalobos, and Chevalier are dismissed as frivolous and for failure to state a claim for which relief may be granted.

### III. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. Plaintiff Joe De La Cruz's claims are **DISMISSED** without prejudice under Fed. R. Civ. P. 41(b) for failure to prosecute.

2. Plaintiff Luis A. Mendoza's claims are **DISMISSED** with prejudice as frivolous and for failure to state a claim for which relief may be granted.

3. Plaintiffs' motion to execute service of process (Doc. No. 14) is **DENIED**.

4. All other pending motions, if any, are **DENIED as MOOT**.

5. This dismissal counts as a "strike" as to **Luis A. Mendoza** for purposes of 28 U.S.C. § 1915(g).

The Clerk's Office will provide a copy of this order to the parties. In addition, the Clerk will provide a copy of this order to the Manager of the Three-Strikes List for the Southern District of Texas at: Three_Strikes@txs.uscourts.gov.

SIGNED at Houston, Texas, this ___17th___ day of March 2023.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE

19 / 19